332

(656 P.2d 786)
No. 53,945

WILLIAM T. LYTLE, *Appellee,* v. PEPSI COLA GENERAL BOTTLERS, INC., *Appellant.*

Opinion filed January 20, 1983.

*Richmond M. Enochs,* and *Daniel P. Hanson,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for the appellant.

*Thomas E. Ruzicka,* of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, Chartered, of Olathe, for the appellee.

Before SPENCER, P.J., PARKS, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: The defendant Pepsi Cola General Bottlers, Inc., has appealed from a judgment of the district court in favor of the plaintiff William T. Lytle, in a personal injury action.

The case arose out of an automobile collision which occurred on May 4, 1977, between a car being driven by the plaintiff and a vehicle owned by defendant, being operated by its employee. Plaintiff suffered personal injuries and his car was damaged.

Within one month from the date of the accident, an adjuster for defendant's liability carrier contacted the plaintiff and settled

plaintiff's claim for damages to his car, and plaintiff, on June 20, 1977, executed a release of all claims for property damage.

During the years 1978 and 1979, the plaintiff had only two conversations with the adjuster for defendant's insurer. In these conversations he was told to keep track of his medical bills and send them to the adjuster so that his claim could be evaluated.

Plaintiff was insured by a policy of insurance providing for personal injury protection coverage (PIP benefits), and prior to April 17, 1978, his insurer paid to plaintiff $2,000 in medical benefits under the policy. On April 17, 1978, defendant's insurance carrier paid the sum of $2,000 to plaintiff's insurer as reimbursement for the medical payments (PIP benefits) previously paid to the plaintiff. The record does not disclose what factors led to the reimbursement decision.

Subsequently, on March 27, 1979, the plaintiff sent a letter to the defendant's insurance carrier demanding $17,168.55 to settle all claims arising out of the collision. The claim was denied. There is nothing in the record to show that plaintiff was ever advised that he should not get an attorney to handle his claim, or that plaintiff ever inquired or was advised about any limitation statute. The record is also devoid of any evidence of any partial or advance payment made to the plaintiff other than the payment in settlement of his car damage made on June 20, 1977.

This action was commenced on August 31, 1979. Timely answer was filed by defendant, generally denying the plaintiff's claims and raising the affirmative defense of the statute of limitations. Thereafter, defendant filed a motion for summary judgment based upon the running of the two-year statute of limitations and briefs were submitted by both parties. The trial court, in a memorandum decision dated May 27, 1981, denied the defendant's motion, holding that under K.S.A. 40-275, the $2,000 payment made to plaintiff's insurer as reimbursement of PIP benefits paid by plaintiff's insurer tolled the statute of limitations, and that the two-year period of limitations, therefore, had not expired.

An application for an interlocutory appeal was filed by plaintiff; however, this court refused to accept jurisdiction on an interlocutory basis and remanded the case for a final judgment. In an effort to expedite litigation, the parties then stipulated that judgment should be entered in favor of plaintiff in the sum of

$11,500 with the understanding that defendant would appeal on the issue of the statute of limitations defense.

Judgment in favor of plaintiff was entered accordingly on October 20, 1981, and defendant has appealed from the judgment and the decision of the trial court entered on May 27, 1981, denying defendant's motion for summary judgment.

The question presented on appeal is whether the reimbursement of PIP benefits made by defendant's insurer to plaintiff's insurer under the Kansas no-fault insurance law was an "advance payment or partial payment of damages, predicated on possible tort liability, as an accommodation to an injured person, or on his behalf to others," within the meaning of K.S.A. 40-275, so as to toll the running of the statute of limitations. The issue appears to be one of first impression in this state.

The applicable statute of limitations is K.S.A. 60-513, which provides that claims of this nature must be brought within two years from the date on which the cause of action arises. In this case, the parties concede that the cause of action arose on May 4, 1977, the date of the accident, and suit was not filed until August 31, 1979, nearly four months after the expiration of the two-year period. Plaintiff's cause of action is barred, therefore, unless the running of the statute has been tolled. Plaintiff contends that the $2,000 reimbursement payment made by defendant's insurer on April 17, 1978, was an advance or partial payment of damages within the meaning of K.S.A. 40-275 and tolled the running of the limitations statute.

Insofar as pertinent to this action, this statute provides as follows:

"No advance payment or partial payment of damages, predicated on possible tort liability, as an accommodation to an injured person, or on his behalf to others . . . of medical expenses, loss of earnings and other actual out of pocket expenses, because of an injury . . . property loss or potential claim against any person, firm, trust or corporation, shall be admissible into evidence as an admission against interest or admission of liability by such party or self insurer, or if paid by an insurer of such party, as the insurer's recognition of such liability with respect to such injured . . . person, or with respect to any other claim arising from the same accident or event. Any such payments shall, however, constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured . . . person. In the event of a trial involving such a claim, the fact that such payments have been made shall not be brought to the attention of the jury: *Provided*, If after an advance payment or partial payment is made as herein provided for, and thereafter it shall be determined by final judgment of a court of competent jurisdiction that the person, firm, trust or corporation is not liable for an amount sufficient to satisfy the

advance payment or partial payment, such person, firm, trust or corporation shall have no right of action for the recovery of any such a payment: *Provided further,* That the period fixed for the limitation for the commencement of actions shall commence on the date of the last payment or partial payment made hereunder."

The statute has a two-fold purpose. In *Taylor v. Yellow Cab Co.,* 548 S.W.2d 528 (Mo. 1977), the court, in dealing with a statute which is virtually identical to K.S.A. 40-275, aptly stated the purposes behind such a statute:

"It seems obvious the enactment of sec. 490.710 serves the purpose of permitting a defendant or his insurer to assist an injured person monetarily during the pendency of a claim and also of facilitating the final settlement of damage claims without suit by removing a very real concern insurance companies have about making a partial payment without extinguishing the claim. The concern was that if the claim was not finally settled and suit was filed the plaintiff might be allowed to put the partial payment in evidence before the jury and thereby cause the jury to think that the defendant must have been at fault since otherwise he would not have paid anything at all prior to suit. And it seems reasonable to assume that insurance companies would not be willing to make advance payments if they were to be confronted with evidence of such payments being admitted before the jury and perhaps then used by the jury against the insured." pp. 532-33.

Defendant contends that the last payment or partial payment contemplated in the statute that tolls the running of the statute of limitations is required to be more than just a payment of the kind described as PIP benefits. It must be a payment made (1) as an accommodation to an injured person, or (2) on his behalf to others.

The generally accepted meaning of the term "accommodate" as used in the context of the statute, is "to help" or "to do a service or favor for" someone (Webster's New World Dictionary 9 [2nd Coll. ed. 1974]). The payment made by defendant's insurer to the plaintiff on June 20, 1977, in settlement of his claim for damages to his car, obviously falls within the category of a payment which tolls the statute of limitations. It was not an admission of liability, but it provided monetary assistance to the plaintiff during the pendency of his claim. It was also an accommodation to him, whether paid to him directly or paid to the car repairer on his behalf. In this respect it fulfilled the purpose of the statute.

The payment made by defendant's insurance carrier to reimburse the plaintiff's insurer for PIP benefits paid to plaintiff does

not, however, meet the same criteria. In discussing the issue, some understanding of the PIP reimbursement which is the subject of this case is helpful. Since the accident occurred on May 4, 1977, the provisions of K.S.A. 40-3113 (Weeks) apply rather than the much-reformed K.S.A. 40-3113a (Ensley). See *Grizzle v. Jacobberger*, 6 Kan. App. 2d 42, 626 P.2d 813 (1981).

PIP benefits are derived from first-party insurance. The injured party looks to his own insurance company for payment of such benefits. *Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan. 325, 552 P.2d 1363 (1976). K.S.A. 40-3113 (Weeks) deals with the rights, duties and liabilities of the respective parties *after* PIP benefits have been paid. To the extent of the PIP benefits paid by it, plaintiff's insurer is subrogated to the plaintiff's right to recover the same from the tortfeasor or his insurance carrier, and may file suit to recover the same after eighteen months from the date the cause of action arose if plaintiff does not do so. As the court stated in *Farmers Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 227 Kan. 533, 539, 608 P.2d 923 (1980),

"[T]he insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter."

The injured party is under no obligation to repay to his insurer any PIP payments received by him from his own insurer. His only liability in this respect is to reimburse his insurance company, in the event he recovers from the tortfeasor or the tortfeasor's insurer, any payments which are duplicative of the PIP benefits paid to him under his first-party coverage.

In order to protect the injured person's insurance carrier, it is given a lien on any such duplicative payments recovered or received by the injured person, and if the tortfeasor or his insurer makes such a payment to the injured person without making the PIP insurer a joint payee on the draft, the PIP insurer may seek indemnity if it is unable to collect from its insured.

The right of reimbursement, then, is a right that belongs to the PIP insurer. In the present case, plaintiff had no interest in the reimbursement funds; they belonged to plaintiff's insurer.

One purpose of K.S.A. 40-275 was to encourage settlements without litigation and yet provide some safeguards for the parties in the event of litigation. To hold that a payment made, under the circumstances here, by one insurer to another insurer in settle-

ment of a claim for PIP benefits already paid is an advance or partial payment so as to toll the running of the statute of limitations, without doubt, would discourage such settlements.

The settlement payment made here cannot be said to have been made as an accommodation to the plaintiff, since it did not in any way benefit him or assist him monetarily during the pendency of his claim.

Plaintiff asserts, however, that the reimbursement payment was a payment made on his behalf. But there was no liability or indebtedness owed by plaintiff to his insurer to justify a payment made for him or on his behalf. Plaintiff's only obligation to his insurer in this respect was to reimbursement his carrier if and when he received a recovery of sums duplicative of the PIP payments paid to him under his first-party coverage—a situation that never occurred. In short, the two insurance companies between themselves simply settled a potential source of litigation over a claim in which plaintiff no longer had any interest.

The last proviso in the statute was obviously intended to protect an injured party who receives advance or partial payments. It prevents a party from negotiating with the injured person and making partial payments until the statute of limitations has run and then refusing further negotiation or payment, leaving the injured person without complete recovery. There is no evidence in the record to substantiate that this was the tactic employed in this case, particularly in the absence of any evidence that plaintiff even knew of the reimbursement payment prior to filing suit.

We conclude, therefore, that the trial court erred in denying defendant's motion for summary judgment.

Reversed.